UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLENNA RONEE BURNEY,

       Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

Civil Action No.
12-CV-10151

HON. MARK A. GOLDSMITH

**OPINION AND ORDER (1) ACCEPTING AND ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION INSOFAR AS IT IS CONSISTENT WITH THIS OPINION AND ORDER, (2) OVERRULING PLAINTIFF'S OBJECTIONS, (3) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, and (4) DENYING PLAINTIFF'S MOTION TO REMAND**

      This is a social security case. Plaintiff Glenna Ronee Burney appeals from the final determination of the Commissioner of Social Security that she is not disabled and, therefore, not entitled to disability insurance benefits. The matter was referred to Magistrate Judge Mona K. Majzoub for all pretrial proceedings. The Commissioner filed a motion for summary judgment and Plaintiff filed a motion to remand. On February 14, 2013, Magistrate Judge Majzoub issued a Report and Recommendation ("R&R"), recommending that the Commissioner's motion be granted and that Plaintiff's motion be denied. Plaintiff has filed objections to the R&R and the Commissioner has filed a response. The matter is now ready for decision. The Court reviews de novo those portions of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

      The background and procedural history of this case – along with the general legal

1

framework applicable in social society appeals – have been adequately summarized by the Magistrate Judge and need not be repeated in detail here. Plaintiff advances four objections to the R&R. The Court addresses each, in turn.

In her first objection, Plaintiff argues that the hypothetical question crafted by the ALJ to the vocational expert was defective because it did not incorporate the full extent of Plaintiff's difficulties in concentration, persistence, and pace. Consequently, Plaintiff argues that the vocational expert's answer to the question cannot be used to carry the Commissioner's burden of proving the existence of jobs that Plaintiff can perform. See Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 516 (6th Cir. 2011) (For a vocational expert's testimony to constitute substantial evidence that a significant number of jobs exist in the economy, "the question[s] must accurately portray a claimant's physical and mental impairments.").

The ALJ found that Plaintiff has "moderate difficulty" in concentration, persistence, and pace and limited Plaintiff to "simple, routine and repetitive tasks" to be "performed in a work environment free of fast paced production requirements," "involving only simple, work-related decisions," and "with few, if any, work place changes." A.R. 19-20. These limitations were incorporated into the ALJ's hypothetical question to the vocational expert, who testified that Plaintiff could perform her past work as a cashier, dietary aid, and housekeeper. A.R. 84-85. The ALJ concluded that Plaintiff could perform her past relevant work as a cashier or dietary aid. A.R. 29.

In her R&R, the Magistrate Judge concluded that "the ALJ's hypothetical appropriately accounted for Plaintiff's limitations, and the ALJ properly relied on the [vocational expert's] testimony." R&R at 14. In so concluding, the Magistrate Judge noted that "Plaintiff does not express why [the limitations that were included in the hypothetical question] do not account for her

limitation[s] in concentration, persistence, or pace." Id.  Upon de novo review, the Court agrees with the Magistrate Judge that the limitations reflected in the ALJ's hypothetical question adequately account for the limitations he found credible.  In her objections, Plaintiff argues that the hypothetical question in this case is "very similar" to the one in Edwards v. Barnhart, 383 F. Supp. 2d 920 (E.D. Mich. 2005), which was found to be insufficient to account for the claimant's moderate limitations in concentration, persistence, and pace.  However, the hypothetical question in the present case is significantly more detailed than the one in Edwards, rendering that authority inapplicable here.[1]  In any event, in her objections, Plaintiff still does not point out what limitations she believes were erroneously omitted from the hypothetical question.  Plaintiff's first objection is overruled.

In her second objection, Plaintiff argues that "there was no evidentiary basis upon which to attack [her] credibility" with regard to the intensity and frequency of her symptoms.  Objections at 4 (Dkt. 18).  In particular, Plaintiff appears to argue that the ALJ improperly discounted Plaintiff's testimony based on the fact that she was frequently non-compliant with her medication regime.  See id. ("[T]hat the Plaintiff was not compliant with her medication regime does not lead inexorably to the conclusion that the Plaintiff was exaggerating her symptomatology or that her testimony regarding limitations was less credible.").

This Court's review of the ALJ's credibility determination is governed by the following standard:

> It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of

---

[1] The hypothetical question in Edwards contained only the following mental limitations: "a low stress level, and only simple, routine, unskilled work." 383 F. Supp. 2d at 924.  By contrast, the present hypothetical question contains more detailed mental limitations: "simple, routine and repetitive tasks; performed in a work environment free of fast paced production requirements; involving only simple work-related decisions; and with few, if any, work place changes."

> witnesses, including that of the claimant. However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." Soc. Sec. Rul. 96–7p, 1996 WL 374186, at * 4. Rather, such determinations must find support in the record. Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. Consistency of the various pieces of information contained in the record should be scrutinized. Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.
>
> Social Security Ruling 96-7p also requires the ALJ explain his credibility determinations in his decision such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." In other words, blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence.

Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 247-248 (case citations and footnote omitted).

The ALJ in the present case did exactly was he was supposed to do under Rogers. The ALJ devoted nearly nine single-spaced pages in this decision to discussing the medical evidence of record and Plaintiff's hearing testimony. His discussion is extensive and thorough. Along the way, the ALJ made numerous observations supporting his conclusion that he "do[es] not find support for [Plaintiff's] subjective allegations as to the disabling nature of her impairments to the extent that they are inconsistent with [the ALJ]s residual functional capacity finding." A.R. 29. Some of those observations include the following:

- "Dr. Nasrallah noted that typically, [Plaintiff] does not experience nausea . . . with her headaches. However, this directly contradicts [Plaintiff's] statements at the hearing that she does experience nausea with her headaches." A.R. 23.

- "Although [Plaintiff] testified that she suffers a headache at noon every day, she testified that she shops with her mother for 2 hours at a time, visits the library to read or use the computer and uses public transportation to doctor's appointments almost on a daily basis.  This tends to conflict with her testimony that she is unable to function during the day when she has a headache."   A.R. 29.

- "[Plaintiff] stated on her Disability Report that she was unable to work due to her impairments as of April 1, 2007, but she stopped working on March 2, 2008 because she 'moved.'   It is significant that no physician opined that [Plaintiff] was unable to work."   A.R. 29.

These observations, taken together, go entirely unmentioned by Plaintiff in her objections and are more than sufficient to justify the ALJ's credibility finding.

Moreover, as the Magistrate Judge correctly recognized, "the ALJ did not discount Plaintiff's credibility because of her drug [and] alcohol abuse; he found that her drug and alcohol abuse exacerbated her symptoms."   R&R at 17 n.4 (emphasis in original).   The Court agrees with the Magistrate Judge, and therefore rejects Plaintiff's argument to the contrary.   Plaintiff's second objection is overruled.

In her third objection, Plaintiff argues that the ALJ should have given more weight to her Global Assessment Functioning (GAF) scores.   Throughout his decision, the ALJ referenced Plaintiff's various GAF scores and, citing the American Psychiatric Association's Diagnostic & Statistical Manual of Mental Disorders, explained the significance of each score.   The Magistrate Judge correctly concluded that courts in this district do not accord controlling weight to GAF scores.   See R&R at 17-18 (citing cases).   In fact, the Sixth Circuit has held that an ALJ's failure to refer to a GAF score does not make his or her RFC analysis unreliable.   See Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.   Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC

5

inaccurate."). Here, again, the ALJ noted Plaintiff's GAF scores along with their significance. Finally, the ALJ appropriately noted that Plaintiff received her lowest GAF scores while she was both abusing drugs/alcohol or not taking her medications, as prescribed, see A.R. 25 (GAF score of 30 but Plaintiff was abusing drugs and not taking her medications); A.R. 26 (GAF score of 20 but Plaintiff was abusing drugs and not taking her medications), and that Plaintiff's condition improves when she is off drugs/alcohol and on her medications. A.R. 27 ("[T]he medical evidence of record consistently evidences that [Plaintiff's] mental impairments improve when she consistently takes her medication."). Notably, impairments that are controlled by medication are not disabling. See Pasco v. Comm'r of Soc. Sec., 137 F. App'x 828, 836 (6th Cir. 2005) ("[T]here is no objective evidence which suggests that the [claimant's] headaches are so severe that they would keep her from working so long as she takes medication."). Plaintiff's third objection is overruled.

In her fourth and final objection, Plaintiff takes issue with the weight that the ALJ assigned to the opinion of Dr. Ron Marshall, Ph.D, a non-treating source who completed a Psychiatric Review Technique for Plaintiff in December 2008. Dr. Marshall opined that Plaintiff had mild restrictions in daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, and pace, and no episodes of decompensation. A.R. 27. The ALJ credited Dr. Marshall's opinion, except that the ALJ concluded that Plaintiff does not have any restrictions of daily living. Id. The ALJ explained his reasoning for rejecting that aspect of Dr. Marshall's opinion:

> In activities of daily living, [Plaintiff] has no restriction. [Plaintiff] testified at the hearing that she cleans her house every day without assistance, is able to bathe and dress herself, goes to library where she reads or uses the computer, or visits with her mother. When she visits with her mother, they grocery shop for approximately two hours at a time. Then she returns home, eats lunch and watched television.

> She also stated that she has many doctor appointments, and is able to use public transportation to travel to and from such visits. She also is able to prepare full means on her own, such as spaghetti, chili, meatloaf and tacos. Therefore, I have given great weight to the opinion of the medical expert, Dr. O'Brien, who opined that [Plaintiff] has no restriction in this area.

A.R. 19. Plaintiff does not explain specifically what it is in the ALJ's reasoning that she finds problematic. Her fourth objection is overruled.

For the reasons stated above, Defendant's motion for summary judgment (Dkt. 15) is granted and Plaintiff's motion to remand (Dkt. 11) is denied.

SO ORDERED.

Dated: March 28, 2013　　　　　　　　　　　s/Mark A. Goldsmith
　　　　Flint, Michigan　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

　　　　The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 28, 2013.

　　　　　　　　　　　　　　　　　　　　　　s/Deborah J. Goltz
　　　　　　　　　　　　　　　　　　　　　　DEBORAH J. GOLTZ
　　　　　　　　　　　　　　　　　　　　　　Case Manager